### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF FLORIDA

_____

| | |
|---|---|
| **GINA TAYLOR AND JEFFREY TAYLOR,** § | |
| § | **CIVIL ACTION NO.:** |
| *Plaintiffs,* § | |
| § | |
| *vs.* § | |
| § | **COMPLAINT FOR DAMAGES** |
| **COOK MEDICAL, LLC F/K/A COOK** § | |
| **MEDICAL INCORPORATED, COOK** § | **DEMAND FOR JURY TRIAL** |
| **INCORPORATED, AND WILLIAM** § | |
| **COOK EUROPE APS,** § | |
| § | |
| *Defendants.* § | |

_____

## COMPLAINT

**COME NOW** Plaintiffs, Gina Taylor and Jeffrey Taylor, by and through their undersigned counsel, and hereby bring this complaint for damages against Defendants, Cook Medical, LLC f/k/a Cook Medical Incorporated, Cook Incorporated, and William Cook Europe APS, and allege as follows:

## I.    INTRODUCTION

1.     This is an action for damages due to Plaintiffs relating to Defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective product under the name or otherwise known as "inferior vena cava filter".

## II.    PARTIES

2.    Plaintiffs, Gina Taylor and Jeffrey Taylor (hereinafter collectively "Plaintiffs") are and were at all times relevant to this action, residents of the state of Florida with their address at 106 Bay Boulevard, Pensacola, FL 32503.

3.    Plaintiff, Gina Taylor (hereinafter referred to individually as "Plaintiff") suffered injuries as a result of her implanted Cook Celect® Inferior Vena Cava Filer (hereinafter "Cook IVC Filter").

4.    Defendant, Cook Medical, LLC f/k/a Cook Medical Incorporated is an Indiana Corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant, Cook Medical, LLC f/k/a Cook Medical Incorporated regularly conducts business in the state of Florida and is authorized to do so. Defendant, Cook Medical, LLC f/k/a Cook Medical Incorporated also carried on solicitations or service activities in the state of Florida. Defendant, Cook Medical, LLC f/k/a Cook Medical Incorporated may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

5.    Defendant, Cook Incorporated is the parent company of Defendant, Cook Medical, LLC f/k/a Cook Medical Incorporated and is also an Indiana Corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47402. Defendant, Cook Incorporated regularly conducts business in the state of Florida and is authorized to do so. Defendant, Cook Incorporated also carried on solicitations or service activities in the state of Florida. Defendant, Cook Incorporated may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

6.     Defendant, William Cook Europe APS is a foreign corporation with its principal place of business located at Sandet 6, Bjaverskov 4632, Denmark. Defendant, William Cook Europe APS' business model most closely resembles that of an American Corporation. Defendant, William Cook Europe APS is incorporated in and under the laws of Denmark. Defendant, William Cook Europe APS was not incorporated in the state of Florida, nor does it have its principal place of business in the state of Florida. Because Defendant, William Cook Europe APS is incorporated under the laws of Denmark and has its principal place of business in Denmark, diversity of citizenship exits between Plaintiffs and Defendant, William Cook Europe APS. Defendant, William Cook Europe APS conducted research and contributed to the development, design, testing, manufacture, marketing, and distribution of the inferior vena cava filter with which Plaintiff was implanted. Defendant, William Cook Europe APS regularly conducted and sustained business through the sale and distribution of its products in the state of Florida. Defendant, William Cook Europe APS also carried on solicitations or service activities in the state of Florida. Defendant, William Cook Europe APS may be served with process upon its registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

7.     Defendants, Cook Medical, LLC f/k/a Cook Medical Incorporated, Cook Incorporated, and William Cook Europe APS shall hereinafter be referred to collectively as "Defendants".

8.     At all times relevant hereto, Defendants include and have included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

9.    Defendants develop, manufacture, sell and distribute medical devices for use in various medical applications including endovascular cardiology and surgical products throughout the United States and around the world. Defendants' products include Cook IVC Filter, which is used for the prevention of recurrent pulmonary embolism via placement in the vena cava.

### III.    JURISDICTION & VENUE

10.    Venue is proper in this Court under 28 U.S.C § 1391, as a substantial share of the events or omissions giving rise to this cause of action occurred within this judicial district and at all times relevant, Defendants have regularly conducted business within this district.

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs, and because complete diversity of citizenship exists between the parties as Plaintiffs are citizens of the state of Florida and Defendants are citizens of state of Indiana under 28 U.S.C § 1332(c)(1).

### IV.    FACTUAL BACKGROUND

12.    Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell products such as Cook IVC Filter which are sold to and marketed as a temporary/retrievable device to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. Defendants' product, Cook IVC Filter, is introduced into the vena cava via an 8.5 French coaxial introducer sheath system.

13.    Cook IVC Filter and its associated set of implantation and extraction tools and/or devices shall hereinafter be referred to as "Cook IVC Filter set".

14.    Defendants sought Food and Drug Administration ("FDA") approval to market Cook IVC Filter set under Section 510(k) of the Medical Device Amendment.

15.     Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with The Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a pre-market notification to the agency in accordance with Section 510(k)…A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to 'approved' by the agency under a [premarket approval]). *A pre-market notification submitted under 510(k) is thus entirely different from a [premarket approval] which must include data sufficient to demonstrate to FDA that the device is safe and effective.* (Emphasis in original.)

16.     In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory analysis…The § 510(k) notification process is by no means comparable to the [premarket approval] process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of only 20 hours…Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly.

17.     On April 20, 2007, Defendants obtained FDA approval to market their product, Cook IVC Filter and/or Cook IVC Filter set under section 510(k) of the Medical Device Amendment.

18.     An inferior vena cava filter, such as Cook IVC Filter, is a device designed to filter blood clots called thrombi that would otherwise travel from the lower portions of the body to the

heart and lungs. Inferior vena cava filters may be designed for implantation either temporarily or permanently, within the vena cava.

19.    The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. These thrombi are known as deep vein thrombosis ("DVT"). Once the thrombi reach the lungs they are considered pulmonary emboli ("PE"). PE present a grave risk to human life, often resulting in death.

20.    An inferior vena cava filter, like Cook IVC Filter, is designed to prevent thromboembolic events by filtering or preventing thrombi from traveling to the heart and/or lungs.

21.    Cook IVC Filter is a retrievable inferior vena cava filter constructed of Conichrome, a metal alloy.

22.    Cook IVC Filter has four (4) anchoring struts or "primary legs" for fixation, eight (8) independent secondary struts or "stabilizing wires" to improve self-centering and clot trapping, and a small hook for retrieval of the device.

23.    At all times relevant hereto, Cook IVC Filter was widely advertised and promoted by Defendants as a safe and effective treatment for the prevention of recurrent PE via placement in the vena cava. At all times relevant hereto, Defendants continued to promote Cook IVC Filter as safe and effective even though no adequate clinical trials that had been performed to support long or short term efficacy.

24.    Further, at all times relevant hereto, Defendants knew its Cook IVC Filter was defective and knew that said defect was attributable the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

25.     A retrospective review of Defendants' inferior vena cava filter products, including Cook IVC Filter and the Cook Gunther Tulip Filter, was performed using data retrieved between July 2006 and February 2008. One hundred thirty (130) filter removal procedures were attempted during this period. Thirty-three (33) filter removal procedures in which the standard retrieval technique was employed resulted in failure. Authors concluded that "unsuccessful retrieval was due to significant endothelialization and caval penetration" and that "hook endothelialization is the main factor resulting in failed retrieval and continues to be a limitation with these filters". O. Doody, et al.; CardioVascular and Interventional Radiology. "Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fails" 2009 January; 32(1):145-149. Epub October 2008 (Sept. 4, 2008 Technical note).

26.     In 2009, a retrospective review of one hundred fifteen (115) patients who underwent insertion of Cook IVC Filter between December 2005 and October 2007 was performed. While Cook IVC Filter insertion was successful in all patients, authors also concluded that "[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter". O. Doody, et al; Journal of Medical Imaging and Radiation Oncology. "Initial Experience in 115 Patients with the Retrievable Cook Celect Vena Cava Filter" 53 (2009) 64-68 (original article).

27.     In a review of clinical data related to seventy-three (73) patients who had Cook IVC Filter implanted between August 2007 and June 2008, authors found that Cook IVC Filter was related to a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in sixty-one (61) patients, four filters (6.5%) showed significant tilt. Follow-up abdominal computed tomography ("CT") scans of eighteen (18) patients revealed filter-related problems in seven (39%), including penetration of filter legs in four and filter component fracture and migration in one.

28.    In a study of Defendants' Cook IVC Filter and Gunther Tulip Filters implanted between July 2007 and May 2009, published by Cardiovascular Interventional Radiology in April 2012, one hundred percent (100%) of Cook IVC Filters and the Cook Gunther Tulip filters imaged after seventy-one (71) days of implant had caused some degree of filter perforation of the venal caval wall. Durack JC, et al.; CardioVascular Intervention Radiology. "Perforation of the IVC: Rule Rather Than Exception After Longer Indwelling Times for the Gunther Tulip and Celect Retrievable Filters". 2012 April; 35(2):299-308. Epub 2011 March 30. Authors concluded, "Although infrequently reported in the clinical literature, clinical sequelae from IVC filter components breaching the vena cava can be significant". Defendants knew or should have known that their inferior vena cava filter products, including Cook IVC Filter had a high propensity to perforate the vena cava wall.

29.    Also reported in the study "Perforation of the IVC: Rule Rather Than Exception After Longer Indwelling Times for the Gunther Tulip and Celect Retrievable Filters", filter tilt was observed in twenty (20) out of fifty (50) (40%) of implanted Cook IVC Filters and Gunther Tulip filters, and that all tilted filters (100%) also demonstrated vena caval perforation. Defendants knew or should have known that their inferior vena cava filter products, including Cook IVC Filter presented a significant risk of tilt and perforation of the vena cava wall.

30.    Indeed studies and published medical literature, including the above-cited studies, demonstrate Defendants' failure to disclose to patients and physicians, including Plaintiff and Plaintiff's physicians that Cook IVC Filter was subject to breakage, tilt, migration, and unsuccessful retrieval and/or significant retrieval complications even when they knew or should have known of the presence and prevalence of these occurrences.

31.    On December 17, 2009, Plaintiff was admitted to Sacred Heart Hospital in Pensacola, Florida with a DVT. Plaintiff's physicians determined that implantation of an inferior

vena cava filter was the proper therapeutic intervention, at which point Cook IVC Filter was implanted into Plaintiff. The implantation procedure went without complication, and a post-placement Cavogram demonstrated appropriate positioning.

32.     During approximately August 2012, Plaintiff began experiencing severe and constant hip, pelvic, lower back, and leg pain. After suffering months of severe, recurrent pain, Plaintiff underwent a CT scan which revealed "IVC filter leg erosion through IVC with boney reaction and leg erosion into vertebral body". Migration of Cook IVC Filter, strut canal penetration into the L1-L2 vertebra, and nerve compression were also observed in Plaintiff.

33.     These findings warranted recommendation by Plaintiff's physicians to perform an open surgical procedure to attempt to remove Cook IVC Filter on November 26, 2013.

34.     While recovering from her Cook IVC Filter extraction procedure, Plaintiff again began experiencing severe, constant abdominal and chest pain. She sought medical attention for relief and to determine the etiology of this persistent pain, at which point a CT scan of her torso was performed.

35.     Performed on February 13, 2014, the CT scan revealed "portions of two metallic legs lie in retroperitoneum". These "metallic legs" were portions of Cook IVC Filter, either anchoring or independent secondary struts.

36.     At all times relevant hereto, Defendants failed to provide sufficient warnings and instructions that would have put the general public, including Plaintiffs on notice of the dangers and adverse effects caused by implantation of Cook IVC Filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo* and its high susceptibility to retrieval procedure failure.

37.     Cook IVC Filter was designed, manufactured, distributed, sold and/or supplied by Defendants, and was marketed while defective due to the inadequate warnings, instructions,

labeling, and/or inadequate testing in light of Defendants' knowledge of the product's failures and serious adverse events.

38.     At all times relevant hereto, the officers and/or directors of Defendants named herein participated in, authorized and/or directed the production and promotion of Cook IVC Filter when they knew or should have known of the hazardous and dangerous propensities of Cook IVC Filter, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

### V.     FIRST CAUSE OF ACTION
### STRICT PRODUCT LIABILITY – FAILURE TO WARN

39.     Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

40.     At all times relevant hereto, Cook IVC Filter was dangerous and presented a substantial danger to patients who were implanted with Cook IVC Filter and these risks and dangers were known and/or knowable by Defendants at the time of distribution and implantation in Plaintiff in 2009. Ordinary consumers would not have recognized the potential risks and dangers Cook IVC Filter posed to patients, because its use was specifically promoted to improve the health of such patients. Cook IVC Filter was used by Plaintiff and her treating physicians in a reasonably foreseeable manner.

41.     Defendants failed to provide warnings of such risks and dangers to Plaintiff and her medical providers as described herein.

42.     Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with Cook IVC Filter.

43.     At all times relevant hereto, Defendants failed to provide sufficient warnings and instructions that would have put the general public, including Plaintiffs, on notice of the dangers and adverse effects caused by implantation of Cook IVC Filter, including, but not limited to failure of the design to withstand the normal anatomical and physiological loading cycles exerted in vivo.

44.     Defendants failed to disclose to physicians and patients, including Plaintiff, that Cook IVC Filter was subject to breakage and migration or the appropriate degree of risk of perforation and damage to the vena cava wall.

45.     Cook IVC Filter was designed, manufactured, distributed, sold and/or supplied by Defendants, and was marketed while defective due to inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendants' knowledge of the products' failure and attributable serious adverse events.

46.     As a direct and proximate result of the defects of Cook IVC Filter as described herein, Plaintiff suffered significant and severe injuries to her body resulting in significant expenses for medical treatment, a substantial loss of earnings and earning capacity, as well as noneconomic damages.

47.     Further, as a direct and proximate result of the defects of Cook IVC Filter and Defendants' actions as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## VI.      SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY – DESIGN DEFECT

48.      Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

49.      Cook IVC Filter is constructed of Conichrome, a metal alloy.

50.      Defendants have and continue to specifically advertise the Conichrome construction of Cook IVC Filter as a frame which "reduces the risk of fracture".

51.      The Conichrome metal alloy with which Cook IVC Filter is constructed is extremely susceptible to fracture, migration, perforation and failure in other forms after placement in the human body.

52.      At all times relevant hereto, Defendants' Cook IVC Filter was and is defective and prone to failure as a result of inherent design defects that render it incapable of withstanding the normal anatomical and physiological loading cycles exerted in vivo.

53.      Cook IVC Filter's design and construction is of insufficient strength and structural integrity to withstand normal placement within the human body.

54.       Further, Cook IVC Filter's design and construction is of insufficient strength and structural integrity to withstand normal extraction from the human body without breakage and/or fracture.

55.      Defendants' design of Cook IVC Filter is unreasonably defective and presents an extreme risk of injury to patients in which the device is implanted, including Plaintiff.

56.      As a direct and proximate result of the defects of Cook IVC Filter as described herein, Plaintiff suffered significant and severe injuries to her body resulting in significant expenses for medical treatment, a substantial loss of earnings and earning capacity, as well as noneconomic damages.

-12-

57.     Further, as a direct and proximate result of the defects of Cook IVC Filter and Defendants' actions as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## VII.     THIRD CAUSE OF ACTION
### NEGLIGENCE

58.     Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

59.     At all times relevant hereto, Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including Cook IVC Filter.

60.     At all times relevant hereto, Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to patients receiving implantation of Cook IVC Filter, such as Plaintiff.

61.     At the time of manufacture and sale of Cook IVC Filter, Defendants knew or should have reasonably known Cook IVC Filter:

a.  Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

b.  Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

c.  Was designed and manufactured to have insufficient strength or structural integrity to withstand normal placement within the human body;

d. Was designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena cava wall; and/or

e. Was designed and manufactured to have insufficient strength or structural integrity to capably withstand standard retrieval/extraction.

62. Despite the aforementioned duty on the part of Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

a. Unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with Cook IVC Filter, specifically its incidents fracture, migration, perforation and other failure;

b. Unreasonably and carelessly manufacturing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

c. Unreasonably and carelessly designing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

d. Unreasonably and carelessly designing and manufacturing a product that was insufficient in strength or structural integrity to capably withstand standard retrieval/extraction; and/or

e. Unreasonably and carelessly designing a product that presented a risk of harm to Plaintiff and others similarly situated in that it was prone to failure.

63. As a direct and proximate result of the defects of Cook IVC Filter as described herein, Plaintiff suffered significant and severe injuries to her body resulting in significant expenses for medical treatment, a substantial loss of earnings and earning capacity, as well as noneconomic damages.

64.     Further, as a direct and proximate result of the defects of Cook IVC Filter and Defendants' actions as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## VIII.     FOURTH CAUSE OF ACTION
## NEGLIGENCE *PER SE*

(Violation of 21 U.S.C. §321, §331, §352 and 21 C.F.R. §1.21, §801, §803, §807, §820)

65.     Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

66.     At all times relevant hereto, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of Cook IVC Filter.

67.     By reason of their actions and conduct as alleged herein, Defendants violated provisions of statutes and regulations, including but not limited to, the following:

    a.   Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331 and § 352, by misbranding Cook IVC Filter;

    b.   Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 by making statements and/or representations via word, design, device or any combination thereof, failing to reveal material facts with respect to the

consequences that may result from the use of Cook IVC Filter to which the labeling and advertising relates;

c.   Defendants violated 21 C.F.R. § 1.21 in misleading consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of Cook IVC Filter;

d.   Defendants violated 21 C.F.R. § 801 in mislabeling Cook IVF Filter as to its safety and effectiveness and by failing to update its label to reflect post-marketing evidence that Cook IVC Filter was associated with an increased risk of injuries due to tilting, fracture, migration and perforation;

e.   Defendants violated 21 C.F.R. § 803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system related to Cook IVC Filter;

f.   Defendants violated 21 C.F.R. § 807 by failing to notify the FDA and/or the consuming public when Cook IVC Filter was no longer substantially equivalent with regard to safety and efficacy in light of post-marketing adverse events and safety signals; and

b.   Defendants violated 21 C.F.R. § 820 by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective corrective and preventative actions.

68.   As a direct and proximate result of the actions or inactions and violations committed by Defendants with regard to Cook IVC Filter as described herein, Plaintiff suffered significant and severe injuries to her body resulting in significant expenses for medical treatment, a substantial loss of earnings and earning capacity, as well as noneconomic damages.

69.     Further, as a direct and proximate result of the actions or inactions and violations committed by Defendants with regard to Cook IVC Filter as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## IX.     FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS AND IMPLIED WARRANTY

70.     Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

71.     At all times relevant hereto, Defendants were merchants of goods or products for various medical applications, including medical devices and inferior vena cava filters, such as Cook IVC Filter.

72.     Plaintiff, through her medical providers, purchased Cook IVC Filter from Defendants for use in a reasonable and foreseeable manner as intended by Defendants.

73.     At the time and place of sale, distribution and supply of Cook IVC Filter to Plaintiff, Defendants expressly represented and warranted that Cook IVC Filter was safe, and impliedly warranted that the product was reasonably fit for its intended purpose and was of marketable and merchantable quality.

74.     At the time of Plaintiff's purchase from Defendants, Cook IVC Filter was not in a merchantable condition, in that:

a. It was designed in such a manner so as to be prone to an unreasonably high incidence of fracture, perforation of vessels and organs, and/or migration;

b. It was designed in such a manner so as to result in an unreasonably high incidence of injury to the organs, including the vena cava, of the patients in which it was implanted;

c. It was manufactured in such a manner so that the exterior surface of Cook IVC Filter was inadequately, improperly and inappropriately designed as to cause the device to weaken and fail; and

d. It was designed and manufactured in such a manner as to present an unreasonably high risk of retrieval/extraction procedure failure.

75. Additionally, Defendants' beached their implied warranties as follows:

a. Defendants failed to provide warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that Cook IVC Filter would cause harm;

b. Defendants manufactured and/or sold Cook IVC Filter while Cook IVC Filter did not conform to representations made by Defendants when it left Defendants' control;

c. Defendants manufactured and/or sold Cook IVC Filter which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the design or formulation of Cook IVC Filter exceeded the benefits associated with said design. These defects existed at the time the product left Defendants' control; and

d. Defendants manufactured and/or sold Cook IVC Filter when it materially deviated from the design specifications, formulas, performance standards or form otherwise identical units manufactured to the same design specifications,

formulas, or performance standards, and these defects existed at the time the product left Defendants' control.

76.     Further, Defendant's marketing of Cook IVC Filter was false and/or misleading.

77.     Plaintiff and her physicians relied on Defendants' representations in determining which inferior vena cava filter product was appropriate to implant in Plaintiff.

78.     Defendants' product, Cook IVC Filter was unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said product, and accordingly, Defendants breached their expressed warranties and implied warranties associated with their product, Cook IVC Filter.

79.     The foregoing breaches in warranty were substantial contributing factors to the injuries and damages suffered and alleged by Plaintiffs.

80.     As a direct and proximate result of the defects of Cook IVC Filter as described herein, Plaintiff suffered significant and severe injuries to her body resulting in significant expenses for medical treatment, a substantial loss of earnings and earning capacity, as well as noneconomic damages.

81.     Further, as a direct and proximate result of the defects of Cook IVC Filter and Defendants' actions as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## X.      SIXTH CAUSE OF ACTION
## CONSUMER FRAUD AND UNFAIR AND DECEPTIVE TRADE PRACTICES

82.     Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

83.     Defendants had a statutory duty to refrain from engaging in unfair or deceptive acts or practices in the sale and promotion of Cook IVC Filter to Plaintiffs.

84.     Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts and/or practices in violation of Florida's consumer protections laws under Fl. Stat. Ann. § 501.201 *et seq*.

85.     Through its false, untrue, and misleading promotion of Cook IVC Filter, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook IVC Filter via Plaintiff's physicians.

86.     Defendants misrepresented the alleged benefits and characteristics of Cook IVC Filter; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook IVC Filter; misrepresented the quality and efficacy of Cook IVC Filter in comparison to much lower-cost alternatives; misrepresented and advertised that Cook IVC Filter was of a particular standard, quality, or grade which it was not.

87.     Defendants misrepresented factual information regarding Cook IVC Filter in such a manner that upon eventual disclosure of truthful and accurate facts and Plaintiffs' subsequent learning of said truthful and accurate facts, Plaintiff concluded that she would have opted to employ an alternative inferior vena cava filter product or elect an alternative method of preventing PE. If Defendants would have disclosed these truthful and accurate facts regarding Cook IVC Filter and its associated risks prior to the time the device was implanted in Plaintiff,

Plaintiff would have opted to employ an alternative inferior vena cava filter product or elect an alternative method of preventing PE.

88.     Defendants' conduct was of such propensity to cause, and did cause confusion and misunderstanding and further, misled, deceived, and damaged consumers, including Plaintiffs. Defendants' fraudulent, misleading, and deceptive conduct was perpetrated with the intent to induce Plaintiffs to rely on said conduct or representations by purchasing and/or paying for the purchase of Cook IVC Filter.

89.     Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially detrimental to Plaintiffs. Defendants knowingly took advantage of consumers, including Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook IVC Filter; a result of Defendants' conduct and/or misrepresentations.

90.     Plaintiffs purchased and/or paid for the purchase of Cook IVC Filter primarily for person, family, or household purposes. As a direct result of Defendants' violative conduct in the state of Florida, Plaintiffs purchased and/or paid for the purchase of Cook IVC Filter, which was not made for resale.

91.     Further, as a direct and proximate result of the defects of Cook IVC Filter and Defendants' actions as described herein, Plaintiffs have suffered emotional trauma, harm, and loss of consortium, including, but not limited to the loss of society, companionship, services, support, care, and ability to live a normal life; losses that are permanent in nature and will continue into the future.

## XI.      PUNITIVE DAMAGES

92.      Plaintiffs incorporate by reference all of the foregoing allegations inclusively, as if fully set forth at length herein.

93.      At all times relevant hereto, Defendants knew or should have known that Cook IVC Filter was inherently dangerous to individuals in which it was implanted, with respect to the risk of tilt, fracture, migration, and/or perforation.

94.      At all times relevant hereto, Defendants attempted to, and were successful in knowingly misrepresenting facts concerning the safety of Cook IVC Filter.

95.      Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiff's physicians and Plaintiffs, concerning the safety of Cook IVC Filter. Defendants' conduct was willful, wanton, and undertaken with a conscious indifference to the consequences that consumers of their product faced, including Plaintiff.

96.      At all times relevant hereto, Defendants knew and recklessly disregarded the fact that Cook IVC Filter has an unreasonably high rate of tilt, fracture, migration, and/or perforation. Notwithstanding the foregoing, Defendants continued to aggressively market Cook IVC Filter to consumers, including Plaintiffs, without disclosing the aforesaid adverse effects.

97.      Defendants were aware of the insufficient nature of their warnings regarding the risk of fracture, migration, and/or perforation of Cook IVC Filter, and intentionally concealed and/or recklessly failed to disclose said risks and continued to market, distribute, and sell Cook IVC Filter without the addition of sufficient warnings of said risks so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious disregard of the foreseeable harm caused by Cook IVC Filter.

98.     Defendants, and/or alternatively Defendants' employees or agents and their predecessors-in-interest, consciously and/or deliberately concealed risks and dangers associated with their product and proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs by failing to act to disclose these risks to Plaintiff or her healthcare providers. Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff's physicians of vital information that would enable them to weigh the true risks of using Cook IVC Filter against its benefits.

99.     The actions and omissions of Defendants, and/or alternatively Defendants' employees or agents and their predecessors-in-interest, whether taken separately, or together, were of such character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in Plaintiffs' injuries and damages.

100.    As a direct and proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the safety and rights of consumers, including Plaintiffs, Plaintiff has suffered and will continue to suffer severe and permanent physical and emotional injuries, as described with particularity, above. Plaintiffs have endured and will continue to endure pain, suffering, and loss of enjoyment of life; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment and lost wages.

101.    Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the safety and rights of consumers, including Plaintiffs. Defendants are guilty of oppression, fraud, and/or malice, whether expressed or implied, for which they should be held liable to Plaintiffs in the form of punitive damages in an amount deemed appropriate to punish Defendants and deter them from engaging in similar conduct in the future.

## XII.    TOLLING OF THE LIMITATIONS PERIOD

102.    Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiff's healthcare providers the true and significant risks associated with Cook IVC Filter.

103.    As a result of Defendants' actions, Plaintiff and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks associated with Cook IVC Filter, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

104.    Accordingly, no limitations period should begin to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between Plaintiff being implanted with Cook IVC Filter and the harm she suffered as a result.

105.    Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment, as aforementioned.

106.    Further, Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment and other misconduct as described.

107.    Finally, the limitations period should be tolled under principles of equitable tolling.

## XIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

a.    Actual damages in an amount to be determined at trial;

b.    General, economic, and special damages in amount to be determined at trial;

c.      Loss of earnings and impaired earning capacity according to proof at the time of

trial;

d.      Medical expenses according to proof at the time of trial;

e.      For mental and emotional distress, according to proof;

f.      Costs and expenses of this litigation;

g.      Reasonable attorneys' fees and costs as provided by law;

h.      For pre-judgment and post-judgment interest as provided by law;

i.      Punitive or exemplary damages according to proof at the time of trial; and

j.      All such other relief This Court may deem necessary, just and proper.

## XIV.      <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully request a jury trial on all issues.

Respectfully submitted,

Dated: <u>March 20, 2015</u>

/s/ Kimberly R. Lambert Adams
Kimberly R. Lambert Adams, FL Bar #0014479
**Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.**
316 South Baylen Street, Ste. 600
Pensacola, Florida 32502
klambert@levinlaw.com
(850) 435-7056 (Telephone)
(850) 435-7020 (Facsimile)

*Counsel for Plaintiffs*

-25-